[No. 16914-6-III. Division Three. May 13, 1999.]

LARRY CLINTON WALK, *Appellant*, v. THE DEPARTMENT OF
LICENSING, *Respondent*.

*Kenneth D. Beckley*, for appellant.

*Christine O. Gregoire, Attorney General*, and *Timothy S. Hamill, Assistant*, for respondent.

SWEENEY, J. — WAC 448-13-040 requires several safeguards that must be "observed by the operator" before a BAC Verifier DataMaster test is performed. The operator must determine that the person does not vomit, eat, drink or smoke at least 15 minutes prior to the administration of the BAC test. WAC 448-13-040.

Larry Walk was arrested for driving under the influence. An officer—not the BAC operator—observed Mr. Walk for the required 15-minute period before the operator administered the BAC test. The first question here is whether the officer who conducts the BAC test must actually observe the suspect during the observation period required by WAC 448-13-040. Or whether, instead, another officer may actually observe the suspect for the required period and communicate to the operator that the safeguards were satisfied. We conclude that WAC 448-13-040 does not require that the officer actually administering the BAC test personally observe the suspect during the required 15-minute observation period. But here, we find no evidence or finding that the officer who actually observed Mr. Walk before the BAC test communicated his observations to the officer

who actually administered the test. Accordingly, we are constrained to reverse the decision of the trial court which affirmed the suspension of Mr. Walk's license.

## FACTS

The material facts here are undisputed. Deputy Chad Birkenfeld arrested Mr. Walk for driving or being in actual physical control of a motor vehicle while under the influence. At 10:56 P.M., Deputy Birkenfeld checked Mr. Walk's mouth for foreign substances. Deputy Birkenfeld then observed Mr. Walk between 10:56 P.M. and 11:20 P.M. He observed that Mr. Walk did not eat, drink, smoke, or vomit during that time frame.

At 11:20 P.M., Deputy John Eberle arrived at the Cle Elum Police Department to administer the BAC test. Deputy Eberle is a certified and authorized operator of the BAC machine. WAC 448-13-150. According to the BAC printout signed by Deputy Eberle, the first test resulted in a 0.144 reading, and the second in a reading of 0.148.

After the results were reported, the Department of Licensing required Mr. Walk to obtain a probationary driver's license. RCW 46.20.308(7). Mr. Walk requested an administrative hearing to contest the probationary license. RCW 46.20.308(8). He challenged the admissibility of the BAC tests primarily because the officer who administered the tests was not present during the mouth check and observation period. The hearing officer rejected the challenge and sustained the Department's requirement that he obtain a probationary license. The hearing officer concluded that:

> WAC 448-13-040 requires the operator **determine** the mouth-check and 15-minute waiting period has been adhered to. There is no requirement the operator actually be present at those times. He can make the determination based on the observations of a fellow-officer.

Mr. Walk appealed the hearing officer's decision to the Kittitas County Superior Court. The Superior Court affirmed.

## DISCUSSION

Mr. Walk contends the officer who conducts the BAC test must actually observe the 15-minute observation period and safeguards under WAC 448-13-040.

*Standard of Review:* In reviewing an administrative decision, we stand in the same position as the trial court. *Galvin v. Employment Sec. Dep't,* 87 Wn. App. 634, 640, 942 P.2d 1040 (1997), *review denied,* 134 Wn.2d 1004 (1998). The superior court reviews the final order of the Department in the same manner as an appeal from a decision of a court of limited jurisdiction. RCW 46.20.308(9); *Hatfield v. Department of Licensing,* 89 Wn. App. 50, 52-53, 947 P.2d 269 (1997). Rules for Appeal of Decisions of Courts of Limited Jurisdiction (RALJ) 9.1 provides in part:

> **(a) Errors of Law.** The superior court shall review the decision of the court of limited jurisdiction to determine whether that court has committed any errors of law.

> **(b) Factual Determinations.** The superior court shall accept those factual determinations supported by substantial evidence in the record (1) which were expressly made by the court of limited jurisdiction, or (2) that may reasonably be inferred from the judgment of the court of limited jurisdiction.

Although Mr. Walk assigns error to various findings of fact, the first issue is a question of law—whether WAC 448-13-040 requires the officer who conducts the breath test to actually observe during the observation period. Although we may substitute our judgment for that of the administrative body, we accord substantial weight to the agency's view of the law. *Franklin County Sheriff's Office v. Sellers,* 97 Wn.2d 317, 325, 646 P.2d 113 (1982) (reviewing issues of law under the Administrative Procedure Act), *cert. denied,* 459 U.S. 1106 (1983); *Valentine v. Department of Licensing,* 77 Wn. App. 838, 844, 894 P.2d 1352, *review denied,* 127

Wn.2d 1020 (1995); *see also City of Sunnyside v. Fernandez*, 59 Wn. App. 578, 799 P.2d 753 (1990).

■ *Interpretation of WAC 448-13-040:* WAC 448-13-040 states in relevant part:

> **Administration of breath test on the BAC Verifier DataMaster.** The following method for performing a breath test is approved by the state toxicologist pursuant to WAC 448-13-130 and includes the following safeguards *to be observed by the operator* prior to the test being performed. It must be determined that: (1) The person does not vomit or have anything to eat, drink, or smoke for at least fifteen minutes prior to administration of the test; and (2) the subject does not have any foreign substances, not to include dental work, fixed or removable, in his or her mouth at the beginning of the fifteen minute observation period. Such determination shall be made by either an examination of the mouth or a denial by the person that he or she has any foreign substances in mouth.

(Emphasis added.)

■ Like a statute, we interpret a WAC provision to give effect to its underlying policy and intent. *See Fernandez*, 59 Wn. App. at 582. And we glean that intent and purpose from the subject matter and statutory text as a whole. *Id.* (quoting *Eastlake Community Council v. Roanoke Assocs., Inc.*, 82 Wn.2d 475, 490, 513 P.2d 36, 76 A.L.R.3D 360 (1973)).

WAC 448-13-010 spells out the reasons for the rules governing breath testing: (1) informing "the public of the administrative aspects of the state's breath alcohol test program" and (2) practicing those principles accepted in the scientific community. Both purposes are served by allowing an officer, other than the operator, to observe the suspect during the 15-minute waiting period required by WAC 448-13-040. Such a procedure in no way detracts from the scientific accuracy of the BAC test, which, after all, is the goal.

■ An operator can "observe" without being physically present (i.e., by relying on the word of the observing of-

ficer) and still "determine" that the administrative prerequisites for a BAC test were satisfied. The term "observe" is not defined and therefore should be given its ordinary meaning. *State v. Chester*, 133 Wn.2d 15, 22, 940 P.2d 1374 (1997); *Fernandez*, 59 Wn. App. at 581. It is a nontechnical word and should be given its dictionary definition. *Chester*, 133 Wn.2d at 22.

"Observe" means "to obey, comply with, or conform to . . . ." RANDOM HOUSE DICTIONARY 1338 (2d ed. 1987); *see* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 815 (1989) ("to conform one's action or practice to (as a law, rite, or condition) : comply with"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1558 (1993) ("tak[ing] notice of by appropriate conduct : conform one's action or practice to . . . to give heed to (as in deference) . . . to come to realize or know esp[ecially] through consideration of noted facts . . . .").

So an officer may "observe" by assuring that the safeguards and observation period are complied with or conformed to WAC 448-13-040. A testing officer can "observe" then by relying on another officer's observation.

*Communication of Information:* Mr. Walk also complained that there was no evidence Deputy Birkenfeld communicated his observations to Deputy Eberle. Clerk's Papers at 90, 108, 109, 112-13; Appellant's Brief at 2-4. We agree.

We find no evidence that Deputy Birkenfeld told Deputy Eberle that the safeguards were satisfied. Deputy Eberle could not then certify that the requirements of WAC 448-13-040 were met—at least on this record.

■ The hearing officer made and the trial court accepted the following findings of fact:

Finding of Fact 11

Breath Test Document Number 791723 (exhibit 2-8) lists Deputy Eberle as the BAC Operator. In preparing this document Deputy Eberle entered into the BAC Machine that the observation time began an (sic) 10:56 P.M.

And substantial evidence supports that Deputy Eberle was

the BAC operator and that the observation period began at 10:56 P.M. But we cannot say, as a logical consequence from this fact, that Deputy Birkenfeld told Deputy Eberle that the preliminary observation period had been satisfied. *Braegelmann v. Snohomish County*, 53 Wn. App. 381, 383, 766 P.2d 1137, *review denied*, 112 Wn.2d 1020 (1989). We are not free to resolve factual disputes and draw inferences. That was the job of the hearing examiner. *Franklin County*, 97 Wn.2d at 324-25.

Finding of Fact 7

At the direction of Deputy Birkenfeld the BAC Verifier Test was administered to Mr. Walk by Deputy Eberle, also of the Kittitas County Sheriff's Department.

Mr. Walk did not assign error to finding of fact 7. It is therefore a verity on appeal. *Department of Licensing v. Lax*, 125 Wn.2d 818, 822, 888 P.2d 1190 (1995). Again, however, we would have to construe "direction" (as in "go administer the BAC test") to include or mean "communication" (as in "I watched Mr. Walk for 20 minutes and he did not eat, drink, smoke, or vomit"). And while the finder of fact might well have drawn that inference, he did not express such inference. And it is not proper for us to do so. *Franklin County*, 97 Wn.2d at 324-25.

## CONCLUSION

A testing officer may rely on the affirmations of another officer that the WAC 448-13-040 safeguards and observation period were satisfied. But this record does not show that the operator, Deputy Eberle, was aware that those safeguards and the observation had been made.

We reverse the trial court and dismiss the order requiring Mr. Walk to obtain a probationary driver's license.

KATO, J., concurs.

BROWN, J. (concurring in part, dissenting in part) — I

concur in the majority's analysis interpreting WAC 448-13-
-040 to permit one officer to observe the safeguards and af-
firm to another officer administering the BAC Verifier Data-
Master test the relevant information. However, I respect-
fully dissent to the reasoning and conclusion that this
record is insufficient to show the relevant information was
communicated from Deputy Chad Birkenfeld to Deputy
John Eberle. Finding of Fact 7 and 11 sufficiently support
Conclusion of Law 6, assuming reasonable inferences from
this record. Although Mr. Walk assigns error to Finding 11,
Finding 7 is unchallenged and thus is a verity for purposes
of review. *See Initiative 172 (Fair Play for Wash.) v. Western
Wash. Fair Ass'n*, 88 Wn. App. 579, 583, 945 P.2d 761
(1997). Finding 7 provides:

> At the direction of Deputy Birkenfeld the BAC Verifier Test
> was administered to Mr. Walk by Deputy Eerle, also of the Kit-
> titas County Sheriff's Department.

Finding 11 provides:

> Breath Test Document Number 791723 (exhibit 2-8) lists
> Deputy Eberle as the BAC Operator. In preparing this docu-
> ment Deputy Eberle entered into the BAC Machine that the
> observation time began an (sic) 10:56 P.M.

Conclusion 6 provides:

> A reasonable inference is drawn that Deputy Eberle, prior
> to administering the breath-test to Mr. Walk, made the
> determinations required by WAC 448-13-040 based upon the
> mouth-check and observation period initiated by Deputy
> Birkenfeld at 10:56 P.M. (see exhibit 2-4). This same time,
> 10:56 P.M., appears as the time observation began on Breath
> Test Document Number 791723, prepared by Deputy Eberle,
> (see exhibit number 2-8).

Both deputies were at the scene and working together.
This process continued at the station. Deputy Birkenfeld
observed Mr. Walk and Deputy Eberle administered the
test. Deputy Eberle arrived at the station at 11:20 P.M., af-
ter Deputy Birkenfeld began observation at 10:56 P.M. That
Deputy Birkenfeld failed to communicate his observations

*to* Deputy Eberle is *not* an assignment of error or issue raised by Mr. Walk. Neither party has briefed the issue.

First, reversal should not be based upon an issue not set forth by the parties in their briefs. RAP 12.1(a). Second, assuming the issue was properly before us, communication from Deputy Birkenfeld to Deputy Eberle is an essential assumption and inference drawn by both the hearing officer and Mr. Walk and supported by this record. The hearing examiner draws this inference in Conclusion 6. Mr. Walk twice assumes at page 4 of his brief that the BAC testing officer "receive[d]" information from his "fellow officer" (or any third person) for the purpose of framing his interpretation issue that we have decided adversely to him. Further, Mr. Walk at page 8 of his brief says: "Deputy Birkenfeld commenced the observation period at 22:56 and sat with Appellant Walk until 23:20, at which time Deputy Eberle arrived who spent 4 minutes in administering the actual blowing into the machine for the two test samples." Mr. Walk's issue relates exclusively to Deputy Eberle not being "present during the *entire*, uninterrupted minimum 15-minute observation period" (emphasis added) and not seeing the mouth check, not that one deputy failed to communicate the relevant information to the other. (Appellant's Br. at 8).

Even though not an issue raised by the parties, substantial evidence does exist to support the proposition that Deputy Birkenfeld communicated the relevant information to Deputy Eberle. Substantial evidence must support the conclusion that the alleged fact (communication) is as alleged either directly or by reasonable inference. *Cook v. Cook*, 80 Wn.2d 642, 646, 497 P.2d 584 (1972). An inference that a fact or proposition is as alleged is drawn by a process of deductive reasoning as a logical consequence from other facts proved or admitted. *Braegelmann v. Snohomish County*, 53 Wn. App. 381, 383, 766 P.2d 1137, *review denied*, 112 Wn.2d 1020 (1989).

This record shows that Deputy Birkenfeld and Deputy Eberle were together during some portion of the observa-

tion period, the deputies were together when the BAC testing began, and that Deputy Eberle recorded data in the BAC test record collected by and first known solely to Deputy Birkenfeld. Moreover, it is stated as an uncontested fact from Finding 7 that Deputy Eberle administered the BAC test *"[a]t the direction of* Deputy Birkenfeld." (Emphasis added.) The reasonable inferences apparently drawn by both the hearing officer and Mr. Walk are that the beginning observation time was delivered by Deputy Birkenfeld to Deputy Eberle, and that Deputy Eberle received the observation data and recorded it in the BAC test record at Deputy Birkenfeld's direction. Thus, communication of the observation times from Deputy Birkenfeld to Deputy Eberle is supported by logical deductions from this record. Therefore, substantial evidence exists to support the hearing officer's conclusions and the superior court's decision to affirm.

In conclusion, RAP 12.1(a) normally precludes a reviewing court from deciding a case outside of the issues submitted and briefed by the parties. Even assuming the issue is properly before us, the record supports that communication of the relevant information did take place. Otherwise, I agree with the majority in its analysis interpreting WAC 448-13-040 to permit one officer to observe and communicate the relevant information to another officer who actually performs the BAC test and records the necessary information in the required form.

Accordingly, I concur in part and dissent in part. I would affirm.

Reconsideration denied June 16, 1999.